Philip H. Cohn, Appellee, v. Fannie Cohn, Appellant.

Term No. 45M9.

Heard in this court at the May term, 1945. Opinion filed October 26, 1945. Released for publication November 27, 1945.

JESSE R. BROWN, of Edwardsville, and LOUIS H. BEASLEY, of East St. Louis, for appellant.

McCAWLEY BAIRD, of East St. Louis, and MALLORY L. BURROUGHS, of Edwardsville, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

On April 20, 1943, Philip H. Cohn, plaintiff appellee, who will be designated hereinafter as plaintiff, filed suit for divorce in the circuit court of Madison county, against Fannie Cohn, defendant appellant, who will be designated hereinafter as defendant, charging cruelty. Defendant filed a counterclaim for separate maintenance, and answer to the complaint. Hearing was had before the court, without a jury, on July 24, 1944, and a decree was entered thereafter granting plaintiff a divorce on the grounds of extreme and repeated cruelty, with no finding in the decree as to separate maintenance. By the terms of said decree, defendant was granted attorney fees and an allowance of $125 a month. From this decree, defendant prosecutes her appeal to this court.

The record discloses that the parties were married in St. Louis, in 1918, and that three children were born of the marriage, who lived part of the time with plaintiff and at other times with defendant. Plaintiff and defendant had lived together in different hotels and homes, but for many years had not cohabited as husband and wife.

Plaintiff was in the real estate business, and in recent years had maintained an office in the Metropolitan Building in East St. Louis. In 1937 he bought a farm, just west of Collinsville, in Madison county,

where he lived for more than five years, before the filing of the suit for divorce, and where defendant was actually living at the time of instituting the suit. Plaintiff testified to having been a resident of Collinsville for 57 or 58 years. He left this farm home on January 12, 1943 to go to a hospital in East St. Louis, and upon leaving there seems to have temporarily taken up his abode with the father of defendant. It is alleged as one of the errors relied upon for reversal that the court erred in finding that plaintiff was an actual resident of Madison county, Illinois. The place of residence of a party in a divorce suit, is a matter of intention and when a residence has once been obtained it is not lost by any temporary departure from that place, which remains the residence of the party, until he or she has acquired another residence, which does not mean merely a temporary abode. *Tobias v. Tobias,* 208 Ill. App. 539. This was a question of fact for the court, who found that plaintiff was an actual resident of Madison county, and we are not inclined to disturb that finding.

It is alleged that the court erred in admitting improper evidence offered on the part of plaintiff. The only ruling of the court on the matter of improper admission of evidence which was argued by counsel for defendant was with reference to certain leading questions asked the witness, Stephen Pronay, a witness called for the plaintiff. He was asked, "In other words, she bit him?" Which was objected to by counsel for defendant and overruled. The court then asked, "What did she do, if you saw it?" And the witness answered, "I did see it. She bit him." This witness had already previously testified more or less in detail without the use of leading questions about defendant biting the finger of plaintiff, in an altercation in the office of plaintiff in East St. Louis. Even where incompetent evidence is admitted judgment will not be reversed if there is other evidence in the record suf-

ficient to support the finding of the court. *In re Estate of Schriver,* 289 Ill. App. 581. Inasmuch as the witness had already testified to these facts, simply reaffirmed later by leading questions, we do not regard the ruling of the court as prejudicial.

It is contended that the trial court erred in finding that defendant has been guilty of extreme and repeated cruelty toward plaintiff, and in that regard it is argued by counsel that the decree of the trial court should be reversed for the reason that there is no finding of any specified acts of cruelty contained in the decree and cite as their authority therefore, *Neely v. Neely,* 223 Ill. App. 168.

The *Neely* case held that when the evidence was not preserved the finding in the decree for divorce that defendant has been guilty of extreme and repeated cruelty since said marriage, as alleged in complainant's bill of complaint, was insufficient to sustain the decree. This is on the theory that it is the general rule in chancery that a party in whose favor a decree is entered, must preserve in the record, the evidence justifying the decree, as in such case no presumption will be indulged that evidence sufficient to sustain the decree was heard, where such evidence does not appear in the record. Inasmuch as in the instant case the evidence was preserved, and was sufficient to justify the ultimate finding of the court, the *Neely* case is not applicable.

It has been held that even when the evidence is not preserved, it will be sufficient if the record shows that the court heard evidence and found the allegations of the bill to be true. *Shillinger v. Shillinger,* 14 Ill. 147; *Hawes v. Hawes,* 33 Ill. 286; *Schmid v. Schmid,* 60 Ill. App. 174.

Plaintiff testified that Mrs. Cohn came into his office in 1937, with a blunt instrument in her hand and hit him across the nose and eyes, resulting in a broken nose and a black eye. He is corroborated as to this act

by the witness, Joseph H. Goldenhersh, an attorney who officed with plaintiff at the time, who testified in substance that defendant came to the office, and that plaintiff came out shortly after bleeding around the bridge of his nose and under one eye. Witness saw no marks on her. He is also corroborated by his secretary Aleda Wulfmeyer, who testified that plaintiff had a cut across his nose and his face was bleeding. She saw the movement of defendant's arm as she struck plaintiff, but did not see the final impact of the blow.

Plaintiff also testified that in March 1943, also in his office, defendant threw the telephone at him, also a heavy paper weight, weighing a pound or more, and finally bit him on the finger, which was lacerated and bled profusely. As to this act, plaintiff is corroborated by Stephen Pronay, employed in his office, who testified that he saw her bite plaintiff.

There is also evidence in the record that she threatened him with a butcher knife in the home, in which he is corroborated by the housekeeper, employed there at the time.

These acts of extreme cruelty are shown against a background of harrassing and annoying conduct, both in the home and at plaintiff's office, characterizing her conduct toward him. The record could seem to indicate that she was derelict in taking care of her home and that she would come to plaintiff's office practically every day, sometimes staying an hour or hour and half, and sometimes longer, going into the file of anyone who would come into the office on business and questioning them.

In support of her counterclaim for separate maintenance, and by way of recrimination, defendant testified to several acts of cruelty on the part of plaintiff toward her, but in the main is uncorroborated as to these.

Counsel for defendant seem to rely greatly on the case of *Teal v. Teal,* 324 Ill. 207, cited by them in their

reply brief, as being authority for their position as to what law is applicable to the facts in the instant case. We do not find either the reasoning or the conclusion in that case in point here. That case was reversed because of erroneous instructions and erroneous exclusion of evidence.

As a reviewing court we will not substitute our judgment for that of the trial court, who saw the witnesses and heard them testify, where the decision depends upon the weight given the testimony. *Ryan v. Ryan,* 321 Ill. App. 467; *Berlingieri v. Berlingieri,* 372 Ill. 60.

■ Counsel for defendant contend that there has been a condonation of the acts of cruelty charged. Condonation implies forgiveness conditioned upon the promise not to repeat the offense, and thereupon if the offense be again committed the effect is to revive the acts committed before condonation. *Teal v. Teal,* 324 Ill. 207. The record is very vague, as to the times when the parties herein lived and cohabited as husband and wife. Certainly there is no well defined line of demarkation, as to when the marital relationship ended. The last act of cruelty testified to by plaintiff was in March 1943, and the record does not indicate that the parties lived together as husband and wife after that. Assuming that there was a condonation of the act of 1937, the act of March 1943 would revive the acts committed before condonation.

■■ The findings of the chancellor will not be disturbed unless they are against the manifest weight of the evidence. *Berlingieri v. Berlingieri,* 372 Ill. 60; *Lewis v. Lewis,* 316 Ill. 447; *Arliskas v. Arliskas,* 343 Ill. 112. Such is not the case here. Other errors assigned are either not argued and therefore waived, or merit no discussion here.

The judgment of the circuit court of Madison county will be affirmed.

*Affirmed.*